## Humphries' Estate

*John H. Longaker* and *Joseph D. Burke*, for accountant.

*John E. Flynn* of *Smillie & Bean*, and *Federico F. Mauck*, for claimants.

HOLLAND, P. J., auditing judge, March 9, 1942.— Decedent died on March 29, 1940, leaving a will probated on April 6, 1940, . . .

The estate is insolvent. . . .

The petition for adjudication sets forth the names of nine creditors, no one of which is entitled under section 13 (a) of the Fiduciaries Act of June 7, 1917, P. L. 447, to more than participation ratably with other general

creditors, but who claim payment in full out of a special savings bank account. Although none of these nine appeared at the audit to press his claim, accountant takes the position that decedent was a trustee of this fund for them, and that hence their claims should be allowed. A general creditor opposes such allowance.

The evidence is so lacking in sufficient clarity and definiteness as to render the finding of precise facts impossible. As far as the court is able to determine, the circumstances were as follows: Decedent was a patent attorney, with offices in Philadelphia. He banked at the Wayne Title & Trust Company, Wayne, Pa. At his death he had two accounts with that institution: an ordinary checking account, with a balance of $272.53 on deposit; and savings account no. 11954, with a balance of $880.29 on deposit. In her account, and in her petition for adjudication, the executrix describes the savings bank account as standing in the name of "Thomas Bertram Humphries, *trustee*". At the hearing, the actual passbook was produced and identified by the sole witness, decedent's secretary. This book was designated: "T. B. Humphries, *Collateral*".

In his practice decedent required assistance of associates in other jurisdictions who, of course, were to be paid for their services. When he received money from a client in a case where he had a foreign associate, decedent wanted to make certain that he would have on hand sufficient money to pay his associate when payment should become due. So he opened this account, on July 26, 1939, and deposited therein, upon receiving money from a client in such a case, whatever part thereof (estimated in round figures) he expected to pay his associate in the future.

However, no withdrawals were ever actually made from that account since it was opened. Although between that time and his death decedent concluded various matters in connection with which he had thus deposited money in the "collateral" account, when the

time came to pay his associates he did so by checks drawn on his regular checking account. That procedure resulted in there being $880.29 on deposit at his death, whereas he then owed his nine associates an aggregate of only $384.22.

These facts do not make out the necessary elements of a trust. The familiar situation of an attorney who receives money from a client to be used for a specific purpose, and who therefore must not commingle it with his own funds so that it will at all times be available for application as intended, is obviously quite different. There is no evidence that decedent received money from his clients with the understanding that a certain portion of it was to be paid to decedent's associate. Nor is there evidence that, as between decedent and his associates, part of the money decedent received was legally or equitably the property of the associate. The amount decedent thus set aside was determined by him alone, in each case, and was done purely voluntarily and in pursuance to no duty. However laudable his motives, what he did amounted to no more than budgeting for an expense which would have to be met sometime in the future, in a sum not yet definitely determined. The effect is the same as where prudent persons set aside, in various ways, a certain sum each month so that they will have sufficient cash available to pay their real estate taxes, life insurance premiums, or other large, fixed obligations, when they fall due. The entire purpose is to make provisions in advance to meet obligations incurred but as yet unmatured. If a person had regularly set aside in a separate bank account monthly amounts to cover his real estate taxes, then at the eleventh hour withdrew the total and spent it on something else, could the tax collector complain of a breach of trust? Clearly not, and no more could the claimants here be heard to complain if decedent had changed his mind and had closed out the savings account entirely.

We hold that this account is to be considered as part of decedent's estate in no different sense from his checking account, and hence is available for general creditors; further, that the nine claimants above described are general creditors, only. . . .